## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**TONY G. FREEMAN,**

        **Plaintiff,**

**v.**                                               **Case 1:21-cv-01075-STA-cgc**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

---

### REPORT AND RECOMMENDATION ON SECTION 405(g) REVIEW
### OF THE COMMISSIONER'S FINAL DECISION
### DENYING APPLICATION FOR DISABILITY INCOME BENEFITS AND
### SUPPLEMENTAL SECURITY INCOME

---

Plaintiff has filed this action to obtain judicial review of Defendant Kilolo Kajakazi, Acting Commissioner of Social Security's, final decision denying his application for disability income benefits ("DIB") and supplemental security income ("SSI") sought pursuant to Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. Section 401, *et seq*. and Section 1381, *et seq*. (Docket Entry ("D.E.") # 1).1    This matter has been referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #18).    For the reasons set forth herein, it is RECOMMENDED that this case be REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for further administrative proceedings as set forth below.

---

1   The transcript from the administrative proceedings has been filed with the Court and consists of seventy-five exhibits to the Commissioner's Answer.    (*See* D.E #12, #13, #14, #15).    The Court Transcript Index identifies these documents and exhibits and their respective page numbers.    (D.E. at # 12-2).    The Court will refer to these documents as they were paginated in the transcript.

1

## I.    Procedural History

On December 28, 2018, Plaintiff protectively filed applications for DIB and SSI benefits. (Tr. at 2335).    In both applications, Plaintiff alleged disability beginning June 1, 2016.    (*Id*.) Plaintiff's applications were denied initially on August 23, 2019 and upon reconsideration on December 2, 2019.    (Tr. at 2384, 2401, 2418, 2436).    Plaintiff filed a written request for a hearing on January 20, 2020.    (Tr. at 2335).    A hearing was held before an Administrative Law Judge ("ALJ") on September 16, 2020.    (*Id*.)    On October 23, 2020, the ALJ determined that Plaintiff was not disabled under the Act.    (Tr. at 2335-45).    The Appeals Council further denied Plaintiff's request for review.    (Tr. at 1-7).    This decision became the Commissioner's final decision.    Plaintiff then filed this action pursuant to 42 U.S.C.§ 405(g) requesting that the Court reverse and remand for an award of benefits or, in the alternative, remand this case for further administrative proceedings.

## II.    Commissioner's Determination of Disability

The Social Security Act defines disability as the inability to engage in substantial gainful activity.    42 U.S.C. § 423(d)(1).    The claimant bears the ultimate burden of establishing an entitlement to benefits.    *Born v. Secretary of Health & Human Services*, 923 F.2d 1168, 1174 (6th Cir.1990).    The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.    *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301 (6th Cir. 1988).

Before proceeding to Step Four of the sequential analysis, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 404.1545, 416.920(a)(4), 416.945. The RFC is a determination of the most an individual can still do despite the physical and/or mental limitations that he or she experiences in a work setting due to his or her impairment(s) and any symptoms resulting therefrom. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520.

Here, the ALJ determined as follows: (1) Plaintiff met the insured status requirements of the Act through March 31, 2021; (2) Plaintiff has not engaged in substantial gainful activity since June 1, 2016, which is the alleged onset date; (3) Plaintiff has the following severe impairments: degenerative disc disease, osteoarthritis, epilepsy, and prior vascular brain insult; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity

of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations: (a) Plaintiff may stand and walk for four of eight hours each day and sit for six of eight hours for a full eight-hour day; (b) Plaintiff has unlimited push/pull and gross/fine dexterity except for occasional push and pull with the lower extremities, bilaterally; (c) Plaintiff is able occasionally climb stairs but may not climb ladders or run; (d) Plaintiff is able to occasionally balance, bend, stoop, crouch, crawl, twist, and squat; and, (e) Plaintiff is restricted from any exposure to heights, dangerous machinery or uneven surfaces; (6) Plaintiff is unable to perform any past relevant work; (7) Plaintiff was born on December 1, 1966 and was 49 years old on the alleged disability date, which is defined as a younger individual; Plaintiff has subsequently changed age category to closely approaching advanced age; (8) Plaintiff has at least a high school education; (9) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled whether or not the claimant has transferable job skills; and, (10) considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.   (Tr. at 2335-2345).   Ultimately, the ALJ determined that Plaintiff had not been under a disability as defined by the Act from June 1, 2016 through the date of his Decision.   (Tr. at 2345).

### III.    Standard of Judicial Review

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party.   "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); *Wyatt v. Secretary of Health & Human Services*, 974 F.2d 680, 683 (6th Cir.1992); *Cohen v. Secretary of Health & Human Srvs.*, 964 F.2d 524, 528 (6th Cir.1992), and whether the correct legal standards were applied, *Landsaw v. Secretary of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

## IV.    Issues Presented

On appeal to this Court, Plaintiff has presented three issues for review. First, Plaintiff argues that the Commissioner's final decision is constitutionally defective because the ALJ and the Appeals Council judges derived their authority from a Commissioner whose appointment was tainted by the unconstitutional removal provision of 42 U.S.C. § 902(a)(3). (Pl.'s Brief at PageID 7163-7166). Second, Plaintiff alleges that the ALJ ignored the "residual limitations" from his prior foot/ankle fractures in making his RFC determination. (*Id*. at PageID 7157-7160). Third, Plaintiff alleges that the ALJ did not consider his need to use a cane in making his RFC determination. (*Id*. at PageID 7160-7163).

The Commissioner concedes that, "[t]o the extent 42 U.S.C. § 903(a)(3) is construed as limiting the President's authority to remove the Commissioner without cause," it violates the principle of separation of powers. (Comm'r Brief at PageID 7216). However, the Commissioner argues that Plaintiff is not entitled to a rehearing of his disability claim because, *inter alia*, Plaintiff cannot show the required nexus between Section 902(a)(3)'s removal restriction and the denial of his benefits claim.[2] (*Id*. at PageID 7216-7222). Additionally, the Commissioner asserts that there is substantial evidence of the following: (1) the ALJ's consideration of Plaintiff's severe and non-severe impairments; (2) the ALJ's finding that Plaintiff could perform a range of light work with occasional postural activities; and, (3) the ALJ's finding that Plaintiff retained the ability to perform other work existing in significant numbers in the national economy.[3] (*Id*. at PageID 7204-7215).

## V.    Proposed Analysis and Conclusions of Law

### A.    Whether the Principle of Separation of Powers Requires the Commissioner's Final Decision to be Set-Aside on Constitutional Grounds

As a threshold issue, Plaintiff relies upon *Seila Law, LLC v. CFPB*, 140 S.Ct. 2183 (2020) for his argument that the Commissioner's final decision should be set aside on constitutional

---

2 The Commissioner further argues that the Court should deny Plaintiff's request for reversal or remand under the harmless error doctrine, the *de facto* officer doctrine, the rule of necessity, and broad prudential considerations. (Comm'r Brief at PageID 7222). However, as set forth, *infra*, it is RECOMMENDED that the District Court need not reach these grounds because the issue raised by Plaintiff may be squarely addressed under *Collins* as it has been by other District Courts that have considered the same question.

3 On January 25, 2022, Plaintiff filed an Unopposed Motion for Leave of Court to File a Reply Brief in Excess Pages. (D.E. #24). As an exhibit to his motion, Plaintiff filed his proposed Reply Brief. (D.E. #24-1). On May 13, 2022, Plaintiff's motion was granted; however, the order specifically stated that Plaintiff must file his reply brief "with the Court under a separate docket entry **on or before Wednesday, May 18, 2022.**" Plaintiff failed to do so. Accordingly, Plaintiff's proposed Reply Brief has not been considered for purposes of this Report and Recommendation.

grounds.    In *Seila Law*, the Supreme Court determined that the statutory provision that governed the removal of the Consumer Financial Protection Bureau's ("CFPB") sole director violated the principle of separation of powers because it only allowed the President to remove the director in cases of "inefficiency, neglect of duty, or malfeasance in office."    *Id*. at 2191-2197 (citing 12 U.S.C. § 5491(c)(3)).

The *Seila Law* decision resulted in constitutional challenges to the removal provisions of other appointed directors.    In *Collins v. Yellen*, 141 S.Ct. 1761 (2021), the Supreme Court concluded that the statutory provision that governed the removal of the Federal Housing Finance Agency's ("FHFA") sole director, which required that the President may only remove him "for cause," likewise ran afoul of the separation of powers set forth in the Constitution.    *Id*. at 1783-87 (citing 12 U.S.C. § 4512(b)(2)).    The Supreme Court continued its analysis, however, to explain that, even where the statutory removal provision is unconstitutional, a plaintiff cannot obtain retrospective relief without showing that the "unconstitutional provision . . . inflict[ed] compensable harm."    *Id*. at 1789.    The reasoning for this requirement was that "the unlawfulness of the removal provision does not strip [an official] of the power to undertake the other responsibilities of his office."    *Id*. at 1788 n.23.    Otherwise stated, where there is no constitutional defect in the method of *appointment*, the official is acting pursuant to lawfully delegated authority even when the removal provision is constitutionally flawed.    *Id*. at 1787. "As a result, there is no reason to regard any of the actions taken" by the agency during that period "as void."    *Id*.

*Seila Law* and *Collins* did not address the constitutionality of the statutory scheme that governs the removal of the Commissioner of Social Security.    This appointment is made by the

President by and with the advice and consent of the Senate pursuant to 42 U.S.C.§ 902(a)(1), and the statutory framework contains a limitation to the President's removal authority similar to those before the Supreme Court *Seila Law* and *Collins*.    Specifically, the "individual service in the office of Commissioner [of Social Security] may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office."    42 U.S.C. § 902(a)(3).

The Sixth Circuit has not addressed the questions of whether the removal provision of Section 902(a)(3) is constitutional and whether, if it is not, what impact this would have on the actions taken by administrative law judges and Appeals Council judges appointed by a Commissioner.    However, numerous decisions of District Courts within the Sixth Circuit have considered these questions in the wake of *Seila Law* and *Collins*.

The sole reported decision on this issue from a District Court within the Sixth Circuit is in the case of *Rhouma v. Commissioner*, 575 F. Supp. 3d 904 (N.D. Ohio 2021).    In *Rhouma*, the plaintiff argued that former-Commissioner Saul's appointment violated the constitutional principle of separation of powers because the removal provision in Section 902(a)(3) is unconstitutional. *Id*. at 916.    As a consequence, the plaintiff argued that former-Commissioner Saul had "no authority to carry out any functions of his office and, by extension, the ALJ had no authority to adjudicate Rhouma's applications, necessitating a remand."    *Id*.    The plaintiff further argued that the ALJ and the Appeals Council judges who considered her case not only were given authority from an unconstitutionally appointed Commissioner but that they also issued their rulings "based on policies and regulations promulgated" by him, thus further tainting the proceedings. *Id*.

8

In *Rhouma*, the Commissioner conceded that Section 902(a)(3) violates the principle of separation of powers but argued that the plaintiff was not entitled to a remand on that basis because, under *Collins v. Yellen*, 141 S.Ct. 1761 (2021), she had not shown that she was actually harmed by the unconstitutional restriction on the president's removal authority.   *Rhouma*, 575 F. Supp. 3d at 916.   Specifically, the Commissioner argued that there were two reasons that the plaintiff could not demonstrate that she was harmed: (1) the ALJ who decided the plaintiff's case was actually appointed by then-Acting Commissioner Nancy Berryhill ("Berryhill"), who was not subject to the unlawful removal provision and was presumptively removable at-will, *see* 42 U.S.C. § 902(b); and, (2) the plaintiff suffered no compensable harm.   *Rhouma*, 575 F. Supp. 3d at 916. The plaintiff replied that the Commissioner failed to raise a standing challenge and, therefore, that argument was waived.   *Id*.

The *Rhouma* court began by setting forth that the judicial power of federal courts is limited to "'cases' and 'controversies.'"   *Id*. at 916-17 (citing U.S. Const. art. III § 2).   This requirement ordinarily requires that a plaintiff show an injury in fact that is traceable to the defendant's conduct and that a court can redress.   *Id*. at 917 (citing *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021)).   If a plaintiff seeks to challenge a statutory restriction on the president's power to remove an executive officer, the plaintiff can establish standing by showing that he or she was harmed by an action that was taken by such an officer and that the action was void.   *Id*. at 917 (citing *Collins*, 141 S.Ct. at 1788 n.24).

The *Rhouma* court then determined that the plaintiff lacked standing to challenge the constitutionality of the SSA's structure.   *Id*. at 917-18.   The *Rhouma* court noted that, although the Commissioner did not articulate the issue as one of standing, he did argue that the plaintiff had

9

not established a "nexus" between Section 902(a)(3)'s removal provision and any alleged harm to the plaintiff, which effectively is a challenge to standing.    *Id.* at 917-18.    Further, the *Rhouma* court noted that, even if the Commissioner had not raised this issue, standing is a jurisdictional requirement and "'cannot be waived or forfeited,'" *Id.* at 918 (citing *Virginia House of Delegates v. Bethune-Hill*, 139 S.Ct. 1945, 1951 (2019), and may be raised by the court *sua sponte* regardless, *Id.* (citations omitted).

The *Rhouma* court further considered the plaintiff's argument that she necessarily suffered a harm because her case was determined under the policies and regulations promulgated by former-Commissioner Saul.    *Id.* at 918.    The court rejected this argument and determined that the plaintiff "must show that the policy and regulatory changes implemented by Saul adversely affected her."    *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 n.1 (1992) ("The injury must affect the plaintiff in some personal way.")).    Although the plaintiff did identify regulatory changes in the way musculoskeletal impairments were evaluated, she did not articulate "how those changes made it more or less likely that her applications would be denied."    *Id.*    The *Rhouma* court found that to be "in stark contrast" to the facts before the Court in *Collins*. Accordingly, the *Rhouma* court concluded that, "[w]ithout a harm traceable to an unlawful action by the Commissioner, Rhouma does not have standing to challenge the constitutional of § 902(a)(3)" and that she was "not entitled to a remand based on her constitutional challenge."    *Id.*

This Court has also issued one decision on the implication of the presumptively unconstitutional removal provision in Section 902(a)(3) on the decisions made by the ALJs and Appeals Councils appointed by him.    In *James Helper v. Kilolo Kijakazi*, No. 21-1130-TMP, 2022 WL 1568742 (W.D. Tenn. May 18, 2022), as in *Rhouma*, this Court relied upon *Collins* for

10

the premise that the plaintiff must show that the removal provision actually caused him harm before the ALJ's decision should be set aside.   *Id.*   The Court concluded that the Plaintiff did not argue that he was specifically harmed by the removal provision or that the outcome of his case was influenced by it in any way.   *Id.*   Accordingly, the Court determined that the ALJ's decision should not be set aside on that basis.   *Id.* at *3, *8.   Even in the absence of the plaintiff's standing, the *Helper* court added two further points to its analysis: (1) that the ALJ who decided the plaintiff's case was appointed by an Acting Commissioner, to whom the unconstitutional removal restriction presumptively does not apply, *see* 42 U.S.C. § 902(b); and, (2) that even if the removal provision of Section 902(a)(3) is unconstitutional, the Commissioner was properly appointed such that actions taken by him are lawful.   *Rhouma*, 2022 WL 1568742, at *8.

Upon review, Plaintiff argues that he suffered actual harm from Section 902(a)(3) because the ALJ and the Appeals Council judges "decided this case under regulations promulgated by Mr. Saul when Mr. Saul had no constitutional authority to issue those rules" and, thus, applied a "presumptively inaccurate legal standard."   (Pl.'s Brief at PageID 7164).   Unlike the plaintiff in *Rhouma*, Plaintiff here does not identify any particular regulations made by former-Commissioner Saul that he believes impacted the determination of his applications.   Further, even if he had done so, the *Rhouma* court concluded that he must then show that those regulations made his claim more or less likely denied.   Plaintiff has not met this bar.   Accordingly, it is RECOMMENDED that Plaintiff is not entitled to either reversal or remand on this basis.[4]

---

4    The Commissioner further argues that Plaintiff has not suffered actual harm due to Section 902(a)(3) because the ALJ who decided his case held office under an appointment legally ratified by then-Acting Commissioner Berryhill rather than former-Commissioner Saul.   The Social Security Administration's website states that Berryhill served as Acting Commissioner from January 21, 2017 until June 17, 2019. *See* https://www.ssa.gov/history/berryhill.html.   While the Court has no reason to doubt the

**B. Whether Substantial Evidence Supports the ALJ's Consideration of Plaintiff's Severe and Non-Severe Impairments**

Turning to the appeal of the Commissioner's decision on Plaintiff's claim for benefits, Plaintiff first alleges that the ALJ failed to consider whether the "nondisplaced fractures of both right and left calcaneus, as well as other fractures in his feet," which resulted in a period of "non-weightbearing status" and continued to cause "[t]enderness, swelling, and limitation of motion of both ankles" over a year later, constituted a medically determinable impairment and, if so, whether the impairment was severe.    (Pl.'s Brief at PageID 7157-7160).

The record reflects that Plaintiff suffered acute, traumatic right and left calcaneal fractures and a right navicular fracture on December 1, 2017 after a fall onto concrete.    (Tr. at 2978-2980, 3496).    At Step Two, the ALJ concluded that Plaintiff had four severe impairments, one of which was of osteoarthritis.    (Tr. at 2337).    The record further reflects that Plaintiff was being treated by Christ Community Health Services ("CCHS") for "post-traumatic osteoarthritis" of multiple joints beginning on January 16, 2020.    (Tr. at 6996-6999).    At his April 24, 2020 visit, Plaintiff was treated for "[a]nkle arthritis" following "bilateral ankle fractures."    (Tr. at 6989-6991).    At his May 15, 2020 visit, Plaintiff was again treated for "[a]nkle arthritis."    (Tr. at 6986-6988).    At his June 12, 2020 visit, Plaintiff complained of "more pain in ankles bilaterally (from remote

---

Commissioner's accuracy, it also does not have any evidence of the date on which the ALJ was appointed or his appointment was ratified.    Plaintiff disputes this point, stating that the "ALJ's delegation of authority in this case came from . . . Saul . . . ."    (Pl.'s Brief at PageID 7164).    However, if the District Court were satisfied with the Commissioner's assertion that the ALJ was appointed by then-Acting Commissioner Berryhill, the *Helper* court explained that the unconstitutional removal provision of Section 902(a)(3) does not apply to an Acting Commissioner.    *See* 42 U.S.C. § 902(b).    Thus, Plaintiff's request for reversal or remand based upon the unconstitutionality of Section 902(a)(3) would not only fail but would be wholly inapplicable to his case.

fractures) esp [sic] with increased walking/movement" as well as "mild edema bilaterally at end of day." (Tr. at 6983). He was again treated for "[a]nkle arthritis." (Tr. at 6983-6985). Accordingly, it is RECOMMENDED that the ALJ did designate the osteoarthritis in Plaintiff's ankles subsequent to his bilateral fractures as a severe impairment. Thus, it is RECOMMENDED that neither reversal nor remand is appropriate for further consideration of Step Two.

### C.   *Whether Substantial Evidence Supports the ALJ's RFC Determination*

Next, Plaintiff argues that the ALJ failed to properly consider his foot and ankle injuries and his need to use a cane in his RFC determination. (Pl.'s Brief at 7157-63). Plaintiff asserts that these errors are not harmless because a proper consideration of his limitations would have limited him to sedentary work, for which the vocational expert ("VE") testified that he did not have transferable skills, thus necessitating a finding of disability and an award of benefits. (Tr. at 7159 & n.1, 7162).

In making the RFC determination, the ALJ is required to consider all medically determinable impairments, including those that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The ALJ must consider the following: "all of the relevant medical and other evidence," including any necessary consultative examinations; any statements from the claimant about what he or she can still do that "have been provided by medical sources, whether or not they are based on formal medical examinations"; and, "descriptions and observations" of the limitations of the impairment(s) and any symptoms resulting therefrom as provided by the claimant and others. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

For claims filed after March 27, 2017, no deference or specific evidentiary weight, including controlling weight, may be given to any medical opinion(s) or prior administrative

medical findings.   20 C.F.R. §§ 404.1520c(a), 416.920c(a).   Instead, the following factors will

be considered when determining the persuasiveness of medical opinions and prior administrative

medical findings: (1) supportability; (2) consistency; (3) relationship with the claimant, including

the length of the treatment relationship, frequency of examinations, purpose of the treatment

relationship, extent of the treatment, and the examining relationship; (4) the medical source's area

of specialization; and, (5) other factors that tend to support or contradict a medical opinion or prior

administrative medical finding.   20 C.F.R. §§ 404.1520c(c), 416.920c(c).   The two most

important factors are supportability and consistency; thus, a decision must articulate how these

two factors were considered.   20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).   A

decision may, but is not required to, explain how the remaining factors were considered in

determining the persuasiveness of a medical opinion or prior administrative medical finding. 20

C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2).   If the ALJ fails to adequately articulate his

findings on the supportability and consistency of medical source opinions or prior administrative

medical findings, remand is required for the ALJ to "build and accurate and logical bridge between

the record evidence and his conclusion."   *See Jessica A. Henderson v. Comm'r of Social Security*,

No. 1:20-CV-1712-JRA, 2021 WL 7251999, at *9 (N.D. Ohio Oct. 27, 2021).

In his consideration of Plaintiff's RFC determination, the ALJ noted that he had relied upon

the medical opinions and prior administrative medical findings and considered all symptoms as

well as the extent to which they can reasonably be accepted as consistent with the objective medical

evidence and other evidence as required by 20 C.F.R. § 404.1520c, § 404.1529, § 416.920c, §

416.929, and Social Security Ruling 16-3p.   (Tr. at 2341-42).

14

The ALJ then considered three medical source opinions in making his RFC determination.[5] The first was a report from a July 15, 2019 consultative examination performed by Dr. Donita Keown, M.D.   (Tr. at 2342-43).   Dr. Keown considered several "present illness[es]," including Plaintiff's history of seizures, lower back pain, right knee pain, and prior ankle fractures.   (Tr. at 6786).   As it pertains to the use of his feet and ankles, the ALJ correctly stated that Dr. Keown found the claimant to be capable of walking or standing for one hour.   (Tr. at 2343, 6789).

With respect to the consistency of Dr. Keown's recommendations relating to the use of Plaintiff's feet and ankles with the record as a whole, the ALJ found that Dr. Keown's recommendations were inconsistent for the following reasons.   First, the ALJ states that Plaintiff's level of pain was reduced to a "reasonable" level 5 with "off the shelf" Tylenol and Advil.   (Tr. at 2343).   The ALJ does not provide a citation to this evidence, and while the Court has reviewed the voluminous record in depth, there are countless documents pertaining to Plaintiff's use of pain relievers for many conditions; thus, it is not possible to verify whether the ALJ is referencing how pain relievers reduce Plaintiff's foot and ankle pain rather than reducing pain from the other impairments that the ALJ considered in his overarching discussion about Plaintiff's medical conditions.   (Tr. at 2343).

Second, the ALJ states that Plaintiff did not go to physical therapy and has not had any surgery or injections for his foot and ankle injuries.   (Tr. at 2343).   The ALJ provides no citation to any evidence of whether physical therapy was prescribed or whether surgery or injections were options for Plaintiff's foot and ankle injuries.   (*Id*.)   In weighing these presumed failures against

---

5    This does not include the psychological consultative examinations, which were addressed by the ALJ, as they are not relevant to the issues before the Court.   (Tr. at 2342).

Plaintiff, the ALJ does not discuss whether Plaintiff's documented lack of insurance may have impacted those decisions.   (Tr. at 2343, 6383).   The ALJ also does not mention that Plaintiff sought additional counseling from CCHS on how to obtain insurance for further treatment of his foot and ankle pain.   (*Id*.)

Third, the ALJ states that Plaintiff was "weaned off opioids" as of June 12, 2020 and was "doing well."   (Tr. at 2343).   A review of the entirety of the notes from his June 12, 2020 visit to CCHS is inconsistent with the ALJ's summary.   Specifically, it states that Plaintiff "[c]ontinues to do well on taper without opioid w/d symptoms, emergence of anxiety, depression and sleep issues *but that he has "noticed more pain in ankles bilaterally (from remote fractures) esp [sic] with increased walking/movement" and that he experiences "mild edema bilaterally at the end of the day."*   (Tr. at 6983) (emphasis added).   It notes that Plaintiff is uninsured and "has not been able to see ortho for eval," and that he has "tried to apply for Tncare [sic] but did not qualify," and that he would like advice regarding medical insurance.   (*Id*.)   It also notes that, while CCHS will no longer continue prescribing opioids after that taper, Plaintiff "would like a referral to pain management." (*Id*)   At that visit, Plaintiff was prescribed Tylenol with Codeine #3 and transdermal Voltaren gel.   (*Id*.)   He was referred to a pain treatment center to continue opioids "if deemed appropriate" and to a social worker to get further assistance on medical insurance.   (*Id*.)

Fourth, the ALJ discusses the claimant's own reports that he "attends to his personal care needs, cleans, does laundry, makes some indoor repairs, drives, shops" and is able to "walk down to the mailbox."   (Tr. at 2341, 2555-2562).   This is not part of his discussion of the consistency of Dr. Keown's recommendations with the record as a whole but, instead, is part of his

consideration of whether Plaintiff's reported limitations on activities, including standing, walking, and stair climbing, were consistent with the record as a whole.   (Tr. at 2341).

Even if the ALJ intended for Plaintiff's ability to perform these activities to demonstrate that Dr. Keown's limitations were inconsistent with the record as a whole, Dr. Keown's recommendations do not state that Plaintiff can never do such activities but instead impose two limitations on the frequency and manner in which Plaintiff may perform them: (1) that Plaintiff may only walk or stand for one hour per day; and, (2) that he must "continue [use of the] assistive device or reduce weightbearing on painful lower limbs."   (Tr. at 6789).   The ALJ does not address whether Plaintiff is able to do any of these activities for more than one hour per day and/or whether he does them without an assistive device.   (Tr. at 2555-2562).   A review of the entirety of Plaintiff's Function Report shows that he did report limitations on the amount of time he can perform these activities and his need for using an assistive device when doing so.   (*Id.*)

Specifically, Plaintiff reported that he cannot walk or stand for "long periods of time" due to his previous ankle fractures.   (Tr. at 2555).   He reported that, while he can go grocery shopping, he goes "very late at night" when "nobody is there" so that it takes only ten to fifteen minutes.   (*Id.*)    He reported that, at most, he can walk 400 to 500 yards before needing to stop and rest and that he must rest for ten to fifteen minutes before resuming any walking.   (Tr. at 2560).   Additionally, he reported that he uses a cane when walking, which is entirely consistent with Dr. Keown's medical opinion.   (Tr. at 2561, 6786-89).   When asked to "[d]escribe what you do from the time you wake up until going to bed," Plaintiff reported as follows: "When I wake up, I eat breakfast [and] then I lay [sic] back down and keep to myself until bedtime."   (Tr. at 2556).   He reported that his only hobby or interest is watching television and that he does not

17

spend time with others or go to any places on a regular basis.    (Tr. at 2559).    Plaintiff reported
that he does laundry once per week and performs cleaning and indoor repairs only "when needed."
(Tr. at 2557).    He reported that he cannot perform yard work because he "cannot walk behind
mower."    (Tr. at 2558).    He reported that he does not go anywhere by walking but only drives
or rides in a car.    (Tr. at 2558).

The ALJ further concluded that Dr. Keown's recommendations were inconsistent with the
record as a whole for the following reasons: (1) Plaintiff had full range of motion in the hips,
shoulders, elbows, wrists, and hands; (2) Plaintiff's straight leg raise was negative bilaterally; (3)
Plaintiff's cranial nerves were intact; (4) Plaintiff's grip was assessed as normal; (5) Plaintiff's
motor strength and deep tendon reflexes were normal; (6) there was no evidence of sensory
dysfunction; (7) there was no evidence of tremor or clonus; (8) his plantars were downgoing; and,
(9) he exhibited normal ability to grasp and manipulate with the left and right hands.    (Tr. at
2343).    These are findings that Dr. Keown made pertaining to Plaintiff's spinal range of motion,
neurologic condition, and musculoskeletal condition as it pertains to joints and parts of the body
other than his feet and ankles.    (*See* 6787-88).    Although this issue is not before the Court, these
findings do appear to support her recommended limitations on sitting, lifting, and carrying.
Notably, however, the ALJ used these findings to negate the fact that Dr. Keown found that
Plaintiff relied upon a cane and had difficulty transferring.    (Tr. at 2343).    Dr. Keown's report
is quite clear, including from the manner in which it is organized by categories, that the findings
as to her proposed neurologic, spinal, and other musculoskeletal limitations are unrelated to her
proposed limitations due to his previous foot and ankle injuries.    (Tr. at 6786-6789).

For the foregoing reasons, it is RECOMMENDED that, while the ALJ did consider the

18

consistency of Dr. Keown's medical opinion with the record as a whole and articulate them in his Decision, his findings are not supported by substantial evidence.   *See* 42 U.S.C. § 405(g).

With respect to the supportability of Dr. Keown's medical opinion, the ALJ generally stated that the treatment notes did not adequately support the claimant's allegations of disability conditions, which are further weakened by inconsistencies between Plaintiff's complaints and the medical evidence.   (Tr. at 2343).   Despite characterizing this discussion as addressing the factor of supportability, the ALJ proceeded to consider the *consistency* of Dr. Keown's opinions with the record as a whole rather than their *supportability*.[6]   (*Id.*)   The supportability factor tests the objective medical evidence and the supporting explanations *presented by the medical source* to support her opinion.   *See* 20 C.F.R. § 404.1520c(c)(1), § 414.920c(c)(1).   The ALJ does briefly mention that Dr. Keown performed a consultative examination, which included examining the "tender[ness] of Plaintiff's ankles and his range of motion, but does not explain why he found her reported observations and supporting explanations to unpersuasive.   (Tr. at 2340-43).   Thus, it is RECOMMENDED that the ALJ failed to properly articulate his findings on the supportability of Dr. Keown's opinions as required.

The ALJ also considered the opinions of Dr. Glenda Knox-Carter, M.D. and Dr. Karla Montague-Brown, M.D.   (Tr. at 2342, 2385-2400, 2419-2435).   Dr. Knox-Carter performed the State agency medical consultation for the initial determination of benefits, and Dr. Montague-Brown performed the State agency medical consultation for the reconsideration thereof.   (*Id.*)

---

6 As the ALJ included certain of his findings on the consistency of Dr. Keown's opinions with the record as a whole under his discussion of the supportability of his opinions, the Court considered those findings, *supra*, in its review of whether the ALJ properly considered the consistency of Dr. Keown's recommendations.

The ALJ correctly notes that both Dr. Knox-Carter and Dr. Montague-Brown found that Plaintiff could perform a "reduced range of light work."    (Tr. at 2342, 2428-2432, 2434, 2395-99).    As to the consistency of their opinions with the record as a whole, the ALJ simply states that "the record as a whole is consistent with a limitation to light exertional work."    (Tr. at 2342).    As to the supportability of their opinions, the ALJ states that "[t]he consultants supported their findings with a review and explanation of the evidence available to them."    It is RECOMMENDED that neither of these conclusions articulate the consistency and supportability of Dr. Knox-Carter and Dr. Montague-Brown's medical opinions as required.    *See* 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).

### VI.    Conclusion

For the reasons set forth herein, it is RECOMMENDED that the case be REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for a reevaluation of Plaintiff's RFC.    This reevaluation must consider and articulate the consistency and supportability of Dr. Keown, Dr. Knox-Carter, and Dr. Montague-Brown's medical opinions pursuant to 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), and (b)(2).    Further, if the ALJ determines that Plaintiff's RFC should be adjusted, the ALJ should proceed to reconsider Steps Four and Five of the sequential analysis.

**SIGNED** this 2nd day of September, 2022.

         s/ Charmiane G. Claxton
         CHARMIANE G. CLAXTON
         UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE SAID OBJECTIONS OR EXCEPTIONS**

**WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL**